## ARKANSAS STATE HIGHWAY COMMISSION
### *v.* Roy HORTON et ux and Eugene HORTON et ux

73-303                               509 S.W. 2d 551

Opinion delivered May 28, 1974

*Thomas B. Keys* and *Kenneth R. Brock,* for appellant.

*Matthews, Purtle, Osterloh & Weber,* for appellees.

CARLETON HARRIS, Chief Justice. This is a highway condemnation case, involving the widening of U. S. Highway 65 through the Town of Marshall. The project involves the taking of a five foot strip of land across the front of appellees' property.[1] Situated on Roy Horton's property are two service stations and a commercial building. A commercial building being used as a discount store is located on the property of Eugene Horton. The principal witness for appellees was Gene Lair of Harrison, a real estate broker, appraiser and home builder, who testified that he had been engaged in the real estate business since 1963. He is a member of the Arkansas Real Estate Association, the Local Board of Harrison District Board of Realtors, and testified that he had made appraisals of real estate in the general area, including appraisals for banks, as well as other lending institutions, and the Veterans Administration. In calculating his before value of the properties, Mr. Lair separated the Roy Horton tract into the three businesses, heretofore mentioned, and he explained his procedure in determining the before value as using the cost approach, income approach and, in the case of the property on which an American Oil station is located, a "capitalization approach." He stated that in his opinion, the fair market value of Roy Horton's property before the taking was $77,500, excluding all vacant property since he did not feel that the last mentioned was damaged by the taking. His after-the-taking figure was $40,950, leaving the amount of damage, in his opinion, to be $36,550. Two of the buildings, heretofore mentioned, were service stations, the before value of the American Oil station being set at $16,500 and the after value at $7,650. On a Texaco station located on the Roy Horton property, Lair set a before value at $19,000 and an after value of $9,500. The building mentioned, which houses a laundromat and office space, was given a before value of $42,-000, and an after value of $23,800. The witness went rather into detail in explaining how he arrived at these values, and stated that his after value was determined on the basis of problems incurred by the taking, mainly restrictions on the property, such as limited access and loss of some of the ser-

---

[1]There was a total taking of 3,287 sq. ft.

vice facilities. For instance, in referring to the American Oil Company station, he mentioned that there could be no outside serving of vehicles at the pumps as they are presently located.[2] He also testified that there could be no outside servicing at the Texaco station, and in fact, the attorney for the State agreed that after the highway department completed the job, vehicles could not be serviced in the area between the pumps (as they presently exist) and the new highway. According to the testimony of the operator of the station, moving the pumps back would make much more difficult the rendering of other services customarily performed by the attendants at the service station.

As to the commercial building, the big item of damage was the taking away of about one-third of the parking space. The evidence reflected that it housed a laundromat, law office, and the Social Services Office. The owner and operator of the laundromat testified that approximately 30 to 40 vehicles came to his place of business each day, staying from 30 minutes to two hours; that there was parking in front and on both sides of the building, such parking space remaining practically full. Mrs. Dorothy Hall, Director of Social Services, testified that her offices were in the building just north of the laundromat. When asked the average number of persons that would come to the office, she stated that from June 1 to August 20, there was an average of 130 persons per month and this would be consistent for the entire year.

As to the building owned by Eugene Horton, the principal evidence related to loss of parking facilities, the proof showing that he lost half of his parking places.

In arguing that there was no substantial evidence to sup-

---

[2]From the testimony:

"Q. While we are thinking about it, did you go out Tuesday and measure to see what the distance was from the, how much land the property owner has now between the pumps and the highway?

A. Yes, I did.

Q. What did that figure come to?

A. One side of the pump island we had an eight foot ten inch slab and the other side was eight foot six inches.

Q. There was a little difference then?

A. Yes, there was a little deviation because of the slant there. It appeared obvious that the edge of the slab is the edge of the private property ownership and also the right-of-way line. After taking somewhat like two foot eight inches left on the outside of the pump island there will be no service area remaining."

port the verdict, the commission urges that the $1.00 per sq. ft. value was not supported by comparable sales; that sales in the Marshall area reflected a value of $.58 per sq. ft., and that, to justify the figure reached, the witness resorted to sales of service station sites in Harrison and Yellville, the former city being about 40 miles away, and the latter a little more. Apparently, comparable sales in Marshall, i.e., sales of service station sites, were rather limited, as witnesses for the State mentioned only one, a sale back in 1968.[3]

While quite a bit of the evidence we have mentioned came from parties other than Lair, the argument that there was no substantial evidence to support the verdict is based upon the testimony of this witness. It might be here mentioned that, though the transcript itself shows that counsel for the commission moved to strike the value set by Lair on the grounds that the latter had not given a fair and reasonable basis for his figures (such motion being denied), this motion does not appear in the abstract; we have frequently said that it is entirely impractical for the members of this court to individually examine each transcript and that motions and rulings of the court must be abstracted; otherwise, asserted errors will not be considered. Since this motion was not abstracted, and is vital to appellant's contention, we would thus be justified in affirming the judgment on that basis. At any rate, we do not agree with the contention.

In *Arkansas Highway Commission* v. *Duff,* 246 Ark. 922, 440 S.W. 2d 563, and cases cited therein, we pointed out that, in determining whether a verdict is supported by substantial evidence, we must review the testimony in the light most favorable to the appellee and indulge all reasonable inferences in favor of the judgment. In the case before us, there is no contention that Lair was not qualified as an expert on real estate values in the area, and his testimony reflected a rather thorough examination of the properties. The jury heard his evidence, that of the other witnesses on behalf of appellees, and heard likewise the testimony of the witnesses for appellant, whose values were substantially different from those given by Lair. The jury likely was also familiar with the property in question, and was certainly in far better position

---

[3]According to Bryan McArthur, an expert witness for the State, this property sold for $.40 per sq. ft.

than this court to determine which asserted values were more nearly correct. It might also be noted that Mr. Lair's figures were not taken at face value since he estimated total damages at $42,800, and the verdict returned was for $23,516.67. Certainly, we are unable to say, as a matter of law, that there was no substantial evidence to support the award.

Affirmed.